# 21-286-cv

PIYUSH PALEJA,

*Plaintiff-Appellant,*

*v.*

KP NY OPERATIONS LLC,
AKA KAILASH PARBAT,

*Defendant-Appellee.*

---

*On Appeal from the United States District Court
for the Southern District of New York*

---

## BRIEF FOR DEFENDANT-APPELLEE

---

Emanuel Kataev, Esq.
MILMAN LABUDA LAW GROUP PLLC
*Attorneys for Defendant-Appellee*
3000 Marcus Avenue, Suite 3W8
Lake Success, New York 11042
516-328-8899

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

---

PIYUSH PALEJA,

Plaintiff -Appellant,

v.

KP NY OPERATIONS LLC d/b/a KAILASH PARBAT,

Defendant- Appellee.

_____

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure (hereinafter "App. Rules" or "App. Rule"), the undersigned counsel of record for the Defendant-Appellee, KP NY Operations LLC ("KPNY"), states that there are two (2) parent corporations, Kailash Parbat Restaurants Private Limited and Kailasa Specialty Cuisine Private Limited (both foreign corporations duly formed under the laws of the country of India), but that there are no publicly held corporations, which own 10% or more of its stock.

# TABLE CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ...........................................................i

TABLES OF AUTHORITIES ...................................................................... iii

STATEMENT OF SUBJECT MATTER AND
APPELLATE JURISDICTION ....................................................................1

STATEMENT OF ISSUES ........................................................................2

STATEMENT OF THE CASE ....................................................................3

SUMMARY OF THE ARGUMENT ..............................................................6

STANDARD OF REVIEW ........................................................................8

ARGUMENT ......................................................................................12

    POINT I

    APPELLANT FAILED TO STATE A CLAIM
    UNDER THE FLSA .........................................................................12

    POINT II

    APPELLANT'S JUDICIAL ADMISSIONS
    EVISCERATE FLSA COVERAGE................................................................21

    POINT III

    APPELLANT MUST BE DENIED LEAVE TO
    AMEND THE COMPLAINT ..............................................................25

CONCLUSION ....................................................................................27

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 25(a)(6) ...................28

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ....................................28

CERTIFICATE OF SERVICE ..................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Ashcroft v. Iqbal,
556 U.S. 662 (2009)...................................................................8

Banco Safra S.A.-Cayman Is. Branch v Samarco Mineracao S.A.,
No. 19-3976-CV, 2021 WL 825743 (2d Cir. Mar. 4, 2021) ..............................27

Banford v. Entergy Nuclear Operations, Inc.,
74 F. Supp. 3d 658 (D. Vt. 2015), aff'd, 649 Fed. Appx. 89
(2d Cir. 2016)....................................................................12, 13, 14, 17

Brock v. Superior Care Inc.,
840 F.2d 1054 (2d Cir. 1988) ...........................................................11

Burke v. New York City Tr. Auth.,
758 Fed. Appx. 192 (2d Cir. 2019), cert denied,
140 S.Ct. 852 (2020)....................................................................9

Chuchuca v. Creative Customs Cabinets Inc.,
No. 13-CV-2506, 2014 WL 6674583 (E.D.N.Y. Nov. 25, 2014) ......................10

City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG,
752 F.3d 173 (2d Cir. 2014) .........................................................26, 27

Cruz v. AAA Carting and Rubbish Removal, Inc.,
116 F. Supp. 3d 232 (S.D.N.Y. 2015) ..............................................9, 10

Dejesus v HF Mgt. Services, LLC,
726 F.3d 85 (2d Cir. 2013) ...............................................................10

Escobar v. GCI Media, Inc.,
No. 08-CIV.-21956, 2009 WL 1758712 (S.D. Fla. Jun. 22, 2009)........11, 21, 22

Everett v. Grady Mem. Hosp. Corp.,
No. 15-CIV.-173 (SCJ), 2016 WL 9651268
(N.D. Ga. May 12, 2016), aff'd, 703 Fed. Appx. 938
(11th Cir. 2017)..........................................................................18

Fernandez v. Zoni Language Centers, Inc.,
  858 F.3d 45 (2d Cir. 2017) ....................................................9

Fracasse v. People's United Bank,
  747 F.3d 141 (2d Cir. 2014) ..............................................1

Glatt v. Fox Searchlight Pictures, Inc.,
  811 F.3d 528 (2d Cir. 2015) ................................................9

Godoy v. Restaurant Opportunity Center of New York, Inc.,
  615 F. Supp. 2d 186 (S.D.N.Y. 2009) ...............................11, 21, 23, 24

Goldberg v. Whitaker House Coop., Inc.,
  366 U.S. 28 (1961) ............................................................11

Gorman v Consol. Edison Corp.,
  488 F.3d 586 (2d Cir. 2007) .......................................17, 18

Kim v. Korean News of Chicago, Inc.,
  No. 17-CIV.-1300, 2020 WL 469314 (N.D. Ill. Jan. 29, 2020) ...................22, 23

Kramer v. Time Warner Inc.,
  937 F.2d 767 (2d Cir. 1991) ................................................25

Lundy v. Catholic Health Sys. of Long Island Inc.,
  711 F.3d 106 (2d Cir. 2013) .........................................*passim*

Nakahata v. New York–Presbyterian Healthcare Sys.,
  723 F.3d 192 (2d Cir. 2013) .............................9, 10, 19, 20

Odums v Greenpoint Mtge. Funding, Inc.,
  831 Fed. Appx. 32 (2d Cir. 2020)........................................25

Overnight Motor Transp. Co. v. Missel,
  316 U.S. 572 (1942).....................................15, 16, 17, 19

Porat v. Lincoln Towers Cmty. Ass'n,
  464 F.3d 274 (2d Cir. 2006) ................................................26

Pruell v. Caritas Christi,
  678 F.3d 10 (1st Cir. 2012)................................................20

Rothstein v. UBS AG,
708 F.3d 82 (2d Cir. 2013) ...................................................8

Shimon v. Equifax Info. Servs. LLC,
994 F.3d 88 (2d Cir. 2021) ..................................................25

Starr v. Sony BMG Music Ent.,
592 F.3d 314 (2d Cir. 2010) ................................................25

TechnoMarine SA v. Giftports, Inc.,
758 F.3d 493 (2d Cir. 2014) ................................................26

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
551 U.S. 308 (2007)..............................................................8

United States v. Klinghoffer Bros. Realty Corp.,
285 F.2d 487 (2d Cir.1960) ................................................15

United States v. Rosenwasser,
323 U.S. 360 (1945)..............................................................11

Walling v. Youngerman–Reynolds Hardwood Co.,
325 U.S. 419 (1945)..............................................................18

Wheeler v. Hurdman,
825 F.2d 257 (10th Cir.1987) .....................................11, 22

**Statutes**

28 U.S.C. § 1291 ........................................................................1

28 U.S.C. § 1331 ........................................................................1

29 U.S.C. § 201, *et seq.*............................................................1

29 U.S.C. § 203(e)(1)................................................................11

29 U.S.C. § 203(g) ....................................................................11

29 U.S.C. § 206..........................................................................9

29 U.S.C. § 206(a)(1)(C) .....................................................4, 15

29 U.S.C. § 207..........................................................................9

New York Labor Law § 650, *et seq.*...........................................................................1

**Rules**

Federal Rules of Civil Procedure Rule 12(b)(6)................................................1, 4, 8

Federal Rules of Civil Procedure Rule 12 .............................................................13

Federal Rules of Civil Procedure Rule 15 .............................................................25

Federal Rules of Civil Procedure Rule 50 .......................................................12, 13

**Regulations**

29 C.F.R. § 541.101 .......................................................................................22, 23

29 C.F.R. § 778.109 ...............................................................................................10

29 C.F.R. § 778.113(a)...........................................................................................18

**Other Authorities**

5B C. Wright & A. Miller, Federal Practice and Procedure § 1357
    (3d ed. 2004 & Supp. 2007)..............................................................................8

**STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION**

Plaintiff Piyush Paleja (hereinafter the "Appellant") brought this action in the United States District Court for the Southern District of New York against KP NY Operations LLC d/b/a Kailash Parbat (hereinafter "Appellee"), alleging that he was not paid overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the New York Labor Law ("NYLL") § 650, *et seq.* The District Court's jurisdiction over this matter was conferred because the matter presented questions arising under federal law pursuant to 28 U.S.C. § 1331. See Fracasse v. People's United Bank, 747 F.3d 141 (2d Cir. 2014).

The District Court (Torres, J.) granted Appellee's motion to dismiss Appellant's complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (hereinafter referred to as "Rules" or "Rule"). (A257-A261). Final judgment was entered on January 15, 2021. (A262). Appellant filed his Notice of Appeal on February 10, 2021 as an appeal of right pursuant to 28 U.S.C. § 1291. (A263).

**STATEMENT OF ISSUES**

(1)    Whether the Court below acted properly in granting Appellee's motion to dismiss;

(2)    Whether the Court below acted properly in denying Appellant's motion to amend the complaint;

(3)    Whether Appellant's complaint states a claim upon which relief can be granted under the FLSA;

(4)    Whether Appellant's judicial admissions in another forum prevents him from stating a claim a claim upon which relief can be granted under the FLSA; and

(5)    Whether granting leave to Appellant to further amend the complaint, which has been amended twice thus far, would be futile.

## STATEMENT OF THE CASE

On January 17, 2020, Appellant commenced a case in the United States District Court for the Southern District of New York asserting claims under the FLSA and NYLL for "wages and overtime." (A005-A008).

At all times relevant, Appellee operated a restaurant and catering company. (A006). Appellant alleges that he was employed by the Appellee as a chef for approximately six (6) years until his separation from employment in or about October 2019. Id. He also alleges that: (i) he regularly worked in excess of forty (40) hours per week; (ii) his typical workweek was "about" seventy (70) hours; and (iii) his work schedule was 11:00 AM to 11:00 PM six (6) days per week.[1] Id.

Appellant alleges that he never received "overtime premiums," but instead received a salary "which was subject to reduction based on the amount of work he did during a given week," meaning he was paid according to the hours he worked. Id. On March 26, 2020, Appellant amended his complaint. (A009-A013). In his Amended Complaint, like the original complaint, Appellant alleges that he regularly worked in excess of forty (40) hours per week, and that although his total number of hours varied from week to week, his "typical week days and hours were approximately 70 hours – 11am to 11pm, 6 days per week." (A010).

---

[1] Accepting this allegation as true, Plaintiff would have worked seventy-two (72) hours during his "typical week," not "approximately" seventy (70) hours.

Like the initial Complaint, Appellant also alleges that he was paid a salary "which was subject to reduction based on the amount of work he did during a given week," meaning he was paid according to the hours he worked. Id.

Appellant alleges further that, for example, in or about the first week of September 2019, he worked "approximately" seventy (70) hours and was paid a salary of "some" $1,400.00.[2] Id. Appellant further alleges in conclusory fashion that his regular rate of pay was $20.00 per hour based on his reading of the law, despite the fact he alleges that he would be paid less if he worked less hours.[3]

On May 12, 2020, Appellee moved to dismiss the Amended Complaint pursuant to Rule 12(b)(6). (A022). On May 14, 2020, Appellant filed a letter motion for a pre-motion conference in anticipation of his motion to amend the complaint to add Gary Mulchandani ("Mulchandani") as a defendant. (A065). Appellant's purported basis to do so was because Appellee communicated that it was in financial distress, and Appellant apparently sought to hold Mulchandani personally responsible solely on account of that representation. Id.

---

[2] The minimum wage under federal law in 2019 was $7.25, and the overtime rate was therefore $10.88. See 29 U.S.C. § 206(a)(1)(C). Appellant was therefore entitled to $290.00 for the first forty (40) hours at $7.25 per hour and $326.40 for the thirty (30) overtime hours at $10.88 per hour for a total of $616.40. There is, therefore, no alleged violation of the FLSA for this "example" week because Plaintiff alleges he was paid $1,400.00 in that week, more than double what he was required to be paid under the FLSA, and does not allege any agreement as to wages.

[3] This conclusory allegation cannot be accepted as true because Appellant contradicts himself by specifically stating that his compensation was subject to reduction based on the amount of work he performed in any given week. (A010). Again, there are no allegations as to any agreement between the parties concerning compensation for a regular workweek.

On June 3, 2020, Appellant formally moved to amend the complaint. (A086). He submitted a proposed amended complaint together with his motion, which merely added conclusory allegations that Mulchandani is an individual employer. (A096). The proposed amended complaint is otherwise identical to the operative amended complaint. (compare A009-A013 with A093-A098).

On May 25, 2020, Appellant filed a separate action in the Supreme Court of the State of New York, New York County, against Appellee and numerous other defendants (hereinafter the "State Court Action"). (A193-A212). There, Appellant claims that he sought to be and became a ten percent (10%) shareholder and member of the Appellee and brought suit for, *inter alia*: (i) a declaratory judgment as to his membership interest; (ii) an accounting; (iii) an Order compelling distribution of profits; and (iv) damages under various state law tort theories. Id.

He alleges in the State Court Action that he sought to be a partner of Appellee "from the beginning," and that he became one, such that he shared in the profits and losses of Appellee as a partner or member. Id. Appellant also acknowledges receipt of payments for his share of the profits, and even includes as exhibits copies of the checks he received for same. Id. The State Court Action remains ongoing, and Appellant maintains there that he is a partner of Appellee such that he is entitled to share in the profits and losses, while maintaining here that he is a rank-and-file employee entitled to the protections of the FLSA.

# SUMMARY OF THE ARGUMENT

Neither the Amended Complaint nor Appellant's proposed amended pleading state a claim upon which relief can be granted under the FLSA. This is because Appellant's allegations that he regularly worked in excess of forty (40) hours per week is insufficient without any supporting factual context.

Although Appellant identifies one (1) week in which he worked "approximately" seventy (70) hours and received "some" $1,400.00 for that workweek, the sum of money he received was sufficient to compensate him under the FLSA. Critically, Plaintiff fails to allege, for example, that he was paid less than the minimum wage or minimum overtime wage for any hours worked.

Further, Plaintiff alleges in the Amended Complaint that he would be paid less if he worked less hours and, as such, cannot claim that he received a weekly salary regardless of the number of hours he worked; the pleadings provide that he received compensation based on his actual hours worked, not regardless of them.

Similarly, Appellant's claims also fail to state a claim for relief because he has made judicial admissions in another forum that he was – and sought to be from the beginning – a partner of the Appellee. Partners and shareholders in a business are not entitled to the protections under the FLSA. Indeed, Appellant submitted copies of checks he received for his portion of the profits from the Appellee supporting the fact that his judicial admissions are true.

Because this Court can take judicial notice of his admissions, and because Appellant was an owner of the Appellee, he cannot state a claim for relief under the FLSA. Appellant parries the weight of his judicial admissions by relying on a regulation concerning an overtime exemption which does not apply to him, and – crucially – which he does not allege in his pleadings applied (or were misapplied) to him. However, this deflection is unavailing, as Appellant was not (and did not allege that he was) subject to the executive exemption to overtime. Indeed, Appellant repeatedly refers to himself as a "non-exempt employee" in his appellate brief. Moreover, a member of a limited liability company with less than twenty percent (20%) of the shares therein is not a covered employee under the FLSA in the same manner that a member of a limited liability company with more than twenty percent (20%) of the shares. In other words, a member of a limited liability company who shares in the profits and losses is not a covered employee under the FLSA regardless of the number of shares he owns.

Finally, Appellant has amended his complaint once as a matter of right, and his proposed amended complaint did not cure the deficiencies in his pleadings, which the Appellee put him on notice of in its motion to dismiss. Appellant failed to cure those deficiencies, nor did he supplement his pleadings with any facts concerning his membership interest in Appellee. Appellant is not entitled to a fourth bite at the apple, and any attempt to amend the pleadings is therefore futile.

## STANDARD OF REVIEW

In reviewing a Rule 12(b)(6) dismissal, the Second Circuit must accept as true all non-conclusory factual allegations in the complaint and draw all reasonable inferences in the Plaintiff's favor. <u>See</u>, <u>e.g.</u>, <u>Rothstein v. UBS AG</u>, 708 F.3d 82, 94 (2d Cir. 2013); <u>see</u> <u>also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief").

Further, the Second Circuit must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. <u>See</u> <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007) (<u>citing</u> 5B C. Wright & A. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004 & Supp. 2007)).

If the facts alleged are ambiguous, the applicable substantive law defines the range of inferences that are permissible. <u>See</u>, <u>e.g.</u>, <u>Iqbal</u>, 556 U.S. at 675 ("In <u>Twombly</u>, [550 U.S.] at 553-554 ... the Court found it necessary first to discuss the antitrust principles implicated by the complaint").

Accordingly, the Second Circuit should "begin by taking note of the elements a plaintiff must plead to state a claim ...." <u>See</u> <u>Id.</u>

In order to state a claim for overtime wages under the FLSA, a plaintiff must allege a single "a single workweek in which [he] worked at least 40 hours and also worked *uncompensated* time in excess of 40 hours[.]" See Burke v. New York City Tr. Auth., 758 Fed. Appx. 192, 195 (2d Cir. 2019), cert denied, 140 S.Ct. 852 (2020) (citing Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 114 (2d Cir. 2013); Nakahata v. New York–Presbyterian Healthcare Sys., 723 F.3d 192, 201 (2d Cir. 2013)).

The FLSA generally requires employers to pay "employees a specified minimum wage, and overtime of time and one-half for hours worked in excess of forty hours per week." See Fernandez v. Zoni Language Centers, Inc., 858 F.3d 45, 48 (2d Cir. 2017) (quoting Glatt v. Fox Searchlight Pictures, Inc., 811 F.3d 528, 533 (2d Cir. 2015) (citing 29 U.S.C. §§ 206–207)).

While a plaintiff may state a claim for a failure to pay overtime for the hours worked in excess of forty (40) hours a week, he does not necessarily state a claim for failure to pay minimum wage for those hours, because "[a]n employee cannot state claim for a minimum wage violation 'unless [his] average hourly wage falls below the federal minimum wage.'" See Cruz v. AAA Carting and Rubbish Removal, Inc., 116 F. Supp. 3d 232, 242 (S.D.N.Y. 2015) (citing, e.g., Lundy).

An employee's average hourly wage is calculated "by dividing his total remuneration for employment ... in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." See 29 C.F.R. § 778.109. "For minimum-wage recovery under the FLSA, the pertinent question is whether 'the amount of compensation received by an employee results in a straight-time hourly rate that is less than the applicable federal minimum wage.'" See Cruz, 116 F. Supp. 3d at 242-43 (citing Chuchuca v. Creative Customs Cabinets Inc., No. 13-CV-2506, 2014 WL 6674583, at *9 n. 10 (E.D.N.Y. Nov. 25, 2014) (citation omitted)).

"[I]n order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." See Dejesus v HF Mgt. Services, LLC, 726 F.3d 85, 88 (2d Cir. 2013); see also Lundy, 711 F.3d at 114; Nakahata, 723 F.3d at 201. As set forth below, despite three (3) attempts, Appellant has altogether failed to state a plausible FLSA claim under both the minimum wage and overtime prongs.

Even if Appellant had stated a claim for overtime under the FLSA[4] (which he does not), the Amended Complaint must nevertheless be dismissed because he is not a covered employee under the FLSA.

---

[4] As set forth below, Appellant cannot – in any instance – assert a minimum wage violation.

The FLSA defines "employee" broadly as "any individual employed by an employer," 29 U.S.C. § 203(e)(1), and "employ" as "to suffer or permit to work." See 29 U.S.C. § 203(g). The FLSA's definition of "employee" "is necessarily a broad one in accordance with the remedial purposes of the Act." See Brock v. Superior Care Inc., 840 F.2d 1054, 1058 (2d Cir. 1988) (citing United States v. Rosenwasser, 323 U.S. 360, 362 (1945)).

Given the aims of the FLSA, the Supreme Court has directed that the question of whether an employee-employer relationship exists for purposes of the FLSA is one of "economic reality." See Goldberg v. Whitaker House Coop., Inc., 366 U.S. 28, 33 (1961).

Business partners and shareholders of corporate entities do not fall within the definition of "employee" under the FLSA. See Godoy v. Restaurant Opportunity Center of New York, Inc., 615 F. Supp. 2d 186 (S.D.N.Y. 2009); see also Wheeler v. Hurdman, 825 F.2d 257, 269 (10th Cir.1987); Escobar v. GCI Media, Inc., No. 08-CIV.-21956, 2009 WL 1758712 (S.D. Fla. Jun. 22, 2009).

For the reasons set forth below, Appellant's judicial admissions in another forum render him incapable of asserting here that he is as covered employee under the FLSA because he has already admitted that he is a business partner of the Appellee who was entitled to share in the profits and losses of Appellee. Accordingly, the Amended Complaint must be dismissed.

# ARGUMENT

## POINT I

## APPELLANT FAILED TO STATE A CLAIM UNDER THE FLSA

Appellant argues that the Amended Complaint states a claim for overtime under the FLSA based on the allegations that he was paid a salary "subject to docking" and regularly worked in excess of forty (40) hours per week.

In support of his argument, Appellant relies on Banford v. Entergy Nuclear Operations, Inc., 74 F. Supp. 3d 658 (D. Vt. 2015), aff'd, 649 Fed. Appx. 89 (2d Cir. 2016). In Banford, a security shift supervisor whom the employer designed as exempt from overtime challenged the exemption. Id. at 660. A jury found that the employee was misclassified and the employer moved the trial court for judgment as a matter of law notwithstanding the verdict under Rule 50. Id. at 661.

In ruling on the motion, the trial court found that the employer in Banford classified the plaintiffs as exempt employees who were paid a *fixed* salary and did not receive any extra pay if they worked more or less than forty (40) hours in a week.[5] Id. at 662 (emphasis added).

---

[5] Unlike in this case, the trial court in Banford also found that, for some weeks, the plaintiffs worked for at least forty-eight (48) hours and for other weeks, they worked less than forty (40) hours. See 74 F. Supp. 3d at 661. Indeed, here, the Amended Complaint does not shed any light on how many hours Plaintiff worked each week except for one unspecified week in September 2019. (A010).

It also found that there was no dispute that the employer there intended that each plaintiff's salary would cover all hours worked regardless of their number, and that employees would receive the same pay *regardless of whether they worked more or less than forty hours in a week,* even if they took a sick day or a vacation day. Id. at 663 (emphasis added). The Second Circuit affirmed the trial court's ruling in Banford, finding that the evidence was sufficient for the jury to find that none of the supervisors made an agreement with their employer to work unlimited hours for the same fixed salary. See 649 Fed. Appx. 89.

Appellant's reliance on Banford is misplaced, as a Grand Canyon of differences distinguishes the holding there from the facts present in this appeal. As an initial matter, Banford was decided on a completely different procedural posture – on post-verdict motions following a jury trial – whereas, here, the complaint was dismissed by a pre-answer motion to dismiss. Indeed, the standard under Rule 50 is not the same as that under Rule 12. Second, Banford involved a case in which an overtime exemption applied which classified the plaintiffs as exempt employees. There is no allegation here by the Appellant that the Appellant was classified as exempt from overtime. Third, the plaintiffs in Banford received a *fixed* salary regardless of the number of hours worked, whereas the Appellant in this case alleged that he was paid a salary **which was subject to reduction based on the amount of work performed**. (A010).

This allegation makes it evident that Appellant was never paid a fixed salary, which significantly distinguishes the Appellant from the plaintiffs in <u>Banford</u>.

Fourth, the Amended Complaint (and the proposed Second Amended Complaint to include Mulchandani as a defendant) do not specify how much Appellant received in compensation when he worked less than seventy (70) hours. This is also unlike <u>Banford</u> because, there, it was clear that the plaintiffs received the same fixed amount every week *regardless of the number of hours they worked*.

Finally (and perhaps stated another way), unlike in <u>Banford</u>, there is no allegation here that the Appellant agreed to work unlimited hours for the same fixed salary. In fact, the Amended Complaint clearly states that the **Appellant's compensation was directly based on the number of hours he worked**. (A010) ("In terms of compensation, Plaintiff was paid a salary which was subject to reduction based on the amount of work performed").

<u>Banford</u> is therefore wholly inapposite and unavailing to support Appellant's argument.

Setting this aside, the Amended Complaint on its own fails to state a claim under the FLSA for both minimum wage and overtime.

With respect to minimum wage, in <u>Lundy</u>, the Second Circuit held that employees are not entitled to recovery for unpaid hours worked up to forty (40) hours a week, so long as the average hourly rate still exceeds the minimum wage.

See Lundy, 711 F.3d at 116 ("'[T]he agreement to work certain additional hours for nothing was in essence an agreement to accept a reduction in pay. So long as the reduced rate still exceeds [the minimum wage], an agreement to accept reduced pay is valid....' [The] [p]laintiffs here have not alleged that they were paid below minimum wage." (alterations in original) (quoting United States v. Klinghoffer Bros. Realty Corp., 285 F.2d 487, 494 (2d Cir.1960))).

The Second Circuit's holding Lundy is easily applied here to extinguish any minimum wage claim asserted in the Amended Complaint. The only allegation as to compensation received is "some" $1,400.00 for working "approximately" seventy (70) hours in the first week of September 2019. (A010). Because the minimum wage under the FLSA was $7.25 in 2019, see 29 U.S.C. § 206(a)(1)(C), Appellant can only state a claim for relief if he received less than $290.00 in a week. Appellant alleges that he received $1,400.00, nearly five (5) times that amount, and cannot therefore state a claim for a minimum wage violation under the FLSA.

Turning to the claim for overtime under the FLSA, Appellant seeks refuge behind the Supreme Court's decision in Overnight Motor Transp. Co. v. Missel, 316 U.S. 572 (1942). For the reasons set forth below, this Court should find that Missel affords Appellant no protection from his failure to state an FLSA overtime claim.

<u>Missel</u> involved the application of the FLSA's overtime provisions to an employee working *irregular hours for a <u>fixed</u> weekly wage*. <u>See</u> 316 U.S. at 573 (emphasis added). His salary, nearly a century ago, was initially $25.50 per week and thereafter $27.50 per week, and the available time records showed an average workweek of sixty-five (65) hours with a maximum of seventy-five (75) to eighty (80) hours in various weeks. <u>Id.</u> at 574. After a trial on liability, the trial court declined to take evidence on damages and issued judgment, while the Circuit Court of Appeals for the Fourth Circuit reversed and remanded for a hearing to determine damages. <u>Id.</u> at 574-75. The Supreme Court found in <u>Missel</u> that

> [n]o problem is presented in assimilating the computation of overtime for employees under contract for a fixed weekly wage for regular contract hours which are the actual hours worked, to similar computations for employees on hourly rates. As that rate is on an hourly basis, it is regular in the statutory sense inasmuch as the rate per hour does not vary for the entire week, though week by week the regular rate varies with the number of hours worked. It is true that the longer the hours the less the rate and the pay per hour. This is not an argument, however, against this method of determining the regular rate of employment for the week in question.

<u>Id.</u> at 580.

Unlike <u>Missel</u>, the Amended Complaint does not allege that Appellant was paid a *fixed* weekly wage for his actual hours worked, nor does the Appellant allege how he was paid in an atypical week when he did not purportedly work "approximately" seventy (70) hours.

Instead, the Amended Complaint alleges that Appellant regularly worked in excess of forty (40) hours in a week without receiving overtime (a statement that is conclusory), and that for one week in the beginning of September 2019, he worked "approximately" seventy (70) hours for which he was paid "some" $1,400.00.

In that regard, Missel is also inapposite for largely the same reasons Banford is. First, the procedural posture in Missel was also post-trial, unlike here.

Second, the plaintiff in Missel was paid a fixed weekly wage without any change as a result of working more or less hours, whereas here, the Appellant alleges his compensation was directly tied to the number of hours he worked.

Third, applying the formula under Missel of dividing the total compensation of $1,400.00 (the only compensation alleged in the Amended Complaint) by seventy (70) hours (also the only definitive number of weekly hours worked alleged in the Amended Complaint) results in a "regular rate" of $20.00.

However, this alone does not give rise to an FLSA overtime claim because there is no allegation that Appellant agreed to work for $20.00 per hour such that he was entitled to overtime at $30.00 per hour. See Gorman v Consol. Edison Corp., 488 F.3d 586, 595 (2d Cir. 2007) (holding that the FLSA generally requires that an employee who works more than forty hours in a week be paid for the excess time at a rate "not less than one and one-half times the regular rate at which he is employed" and that the regular rate is "all remuneration for employment paid

to ... the employee"); see also Walling v. Youngerman–Reynolds Hardwood Co., 325 U.S. 419, 424-25 (1945) (holding that "the hourly rate actually paid the employee for the normal, non-overtime workweek," and "must reflect all payments which the parties have *agreed* shall be received regularly during the workweek, *exclusive of overtime payments*") (emphasis added).

Applying the holdings of Gorman and Walling, it is incontrovertible Appellant failed to allege with a sufficient degree of specificity that he worked overtime hours for which he was not compensated. Instead, he impermissibly seeks to derive the regular rate by dividing the remuneration he alleges was paid for a single week in September 2019 into the approximate number of hours worked that week without alleging what the parties agreed Appellant would receive for hours worked during the workweek exclusive of overtime. This is fatal to his FLSA claim.

Crucially, to calculate "the regular hourly rate of pay, on which time and a half must be paid," the workweek-equivalent salary is divided "by the number of hours which the salary *is intended to compensate*." See 29 CFR § 778.113(a) (emphasis added). Here, again, the Amended Complaint is barren as to what compensation was intended to compensate Appellant for the regular workweek. See Everett v. Grady Mem. Hosp. Corp., No. 15-CIV.-173 (SCJ), 2016 WL 9651268, at *26 (N.D. Ga. May 12, 2016), aff'd, 703 Fed. Appx. 938 (11th Cir.

2017) ("The fact that the employer has failed to comply with the FLSA in not paying overtime does not "alter the employee's regular rate of pay, which under _Missel_ *turns on what the parties agreed the employee would be paid for the hours he actually worked*") (emphasis added).  As such, because there are no allegations concerning what Appellant and Appellee agreed to regarding Appellant's compensation, the Amended Complaint fails to state an overtime claim under the FLSA.

It is also important to address Appellant's arguments concerning misclassification.  The Amended Complaint does not plead that Appellant was classified as exempt and was paid the same amount of wages every week regardless of the number of hours he worked; instead, it specifically alleges that Plaintiff was paid according to the number of hours he worked without specifying any rate whatsoever.  This does not make this case a misclassification case, in which – unlike here – an employee is paid a fixed salary every week regardless of the hours worked.

In that regard, Appellant's protestations concerning the specificity required to state a claim under the FLSA must be ignored, especially in light of the Second Circuit's holdings in Lundy (discussed *supra*), Nakahata, and DeJesus.

In Nakahata,[6] this Court discussed Lundy and recounted how the plaintiff in Lundy pled the number of hours the plaintiffs were typically scheduled to work in a week and failed to state an FLSA overtime claim. See 723 F.3d at 200. The Amended Complaint is no different here. (A010) ("Although his total number of hours varied from week to week his *typical* week days and hours were approximately 70 hours -- 11am to 11pm, 6 days per week") (emphasis added). The Amended Complaint is therefore exactly like the complaint in Lundy, and must thus suffer the same fate here in affirming dismissal.

In DeJesus, this Court discussed the First Circuit's decision in Pruell v. Caritas Christi, where it held that an allegation a plaintiff "regularly worked" more than forty (40) hours a week and was not properly compensated – like the Appellant does here – was "one of those borderline phrases" that while not stating an "ultimate legal conclusion[]," was "nevertheless so threadbare or speculative that [it] fail[ed] to cross the line between the conclusory and the factual." See 678 F.3d 10, 13 (1st Cir. 2012). The Amended Complaint here should be analyzed in the same exact manner because it is no different. As the Hon. Analisa Torres, U.S.D.J. held, Appellant only pled his hours and wages in the aggregate such that it is not possible to determine whether the payment failed to include overtime compensation. (A259). Accordingly, Plaintiff fails to state claim under the FLSA.

---

[6] Because the Second Circuit found in both Nakahata and DeJesus that the allegations there were less specific than those in Lundy, the allegations in those decisions are not analyzed in this brief.

## POINT II

## APPELLANT'S JUDICIAL ADMISSIONS EVISCERATE FLSA COVERAGE

In the State Court Action, Appellant pled and provided evidence of his status as a shareholder and member of the Appellee, a limited liability company duly organized under the laws of the State of New York. (A193-A212).

Courts have held that a plaintiff's status as a *putative* shareholder – unlike an actual shareholder, as pled in Appellant's complaint in the State Court Action – foreclose a plaintiff's ability to pursue wage-and-hour claims because partners in a business are not employees under the FLSA. See, e.g., Godoy v. Restaurant Opportunity Center of New York, Inc., 615 F. Supp. 2d 186 (S.D.N.Y. 2009) (holding that restaurant workers who were putative partners of restaurant were not employees but partners of the business and thus could not pursue wage-and-hour claims as employees). The trial court in Godoy held that the plaintiffs' hours of work there represented their capital contribution in the business, that the same would earn them equity in the business, and the court found that a lack of plaintiffs' right to manage the business alone was not enough to find they were employees. Id. Similarly, the court in Escobar v. GCI Media, Inc. (which relied on Godoy) held that the traditional factors of the economic realities test are not applicable to partnership cases such as Godoy. See No. 08-CIV.-21956, 2009 WL 1758712 (S.D. Fla. Jun. 22, 2009). The same should apply here.

Indeed, the Escobar court held that characteristics pertinent to partnerships, such as the ability to share in profits, exposure to risk, and managerial control, "introduce complexities and economic realities which are not consonant with employee status." Id. (citing Wheeler v. Hurdman, 825 F.2d 257, 269 (10th Cir.1987) (holding that a partner in a business is not covered as an employee under the FLSA)).

The same analysis applies here, where the Appellant indisputably sought to become – and, as he alleged in the State Court Action's complaint, *did* become – a member, or partner, of Appellee such that he received payments for the profits made by Appellee. Plaintiff cannot escape the allegations he made in the State Court Action that directly relate to his relationship with the Appellee here.

To avoid dismissal on this separate ground, it is anticipated Plaintiff will cite 29 C.F.R. § 541.101, concerning the executive exemption to overtime and rely on Kim v. Korean News of Chicago, Inc., No. 17-CIV.-1300, 2020 WL 469314 (N.D. Ill. Jan. 29, 2020). However, Appellant never alleged that he was misclassified as exempt from overtime. Indeed, the record shows Plaintiff taking the position that he is not exempt (A228).

In any event, the Appellant cannot be exempt, because his compensation fluctuated from week to week and he was not paid a fixed salary.

Indeed, Appellant's anticipated reliance on <u>Kim</u> is misplaced, as the trial court there decided whether the plaintiff was subject to the executive exemption to overtime, which is not alleged in the Amended Complaint. As such, the regulation under 29 C.F.R. § 541.101 is not applicable here.

It is also anticipated Appellant will argue that he did not become a partner or member of the Appellee until February 2019 and was, as such, an employee prior to that time. This argument is equally unavailing.

In <u>Godoy</u>, the plaintiffs there were never shareholders with membership interests in the entity they claim employed them. <u>See</u> 615 F. Supp. 2d at 186-191. Indeed, the plaintiffs in <u>Godoy</u> – much like the Appellant here until February 2019 – were putative partners in the business. In <u>Godoy</u>, the plaintiffs alleged that they were told they would become owners of a new restaurant in return for doing 100 hours of work, which they described as "sweat equity." <u>Id.</u> at 188. However, the deal changed, then changed again, which led to disagreements, and ultimately led to the plaintiffs never receiving any membership interest whatsoever, resulting in litigation. <u>Id.</u> at 189-191. In determining whether an employee-employer relationship existed, the trial court in <u>Godoy</u> found that one did not exist based on the ultimate concern in its "economic reality" inquiry of the economic dependence of the putative employees and the putative employer; namely, that as putative co-owners of the business they were working to create, the plaintiffs assumed the risks

of loss and liabilities of the venture and had a real opportunity to share in its profits upon success, with the plaintiffs' hours of work as sweat equity serving as their capital to obtain their membership interest. Id. at 195.

The facts in this case are more clear-cut than in Godoy. Indeed, unlike the plaintiffs in Godoy who were *never* given shares nor dividends for profits but were nonetheless found not to be employees under the FLSA, the Appellant here specifically pled in his state court action that he was a ten percent (10%) shareholder at one point and enjoyed sharing in the profits of KPNY as he admittedly received checks representing *his share of the profits*. (A204). Like the plaintiffs in Godoy, the Appellant here was involved in setting up the business from its inception. (A198) ("From the beginning, [Appellant] had expressed interest in purchasing a share of the [Appellee]").

Appellant cannot distinguish himself in any way from the plaintiffs in Godoy. Appellant's complaint allegations in the state court action allege that he sought to become a shareholder from the outset, participated in setting up the business, and ultimately provided $60,000.00 to purchase his share of KPNY. (A193-A212). Employees do not take actions like this. As such, the Amended Complaint must be dismissed because Appellant's judicial admissions of partnership status deprive him of coverage as an employee under the FLSA.

Accordingly, this Court must affirm the district court's Order granting the motion to dismiss upon *de novo* review after considering the Appellant's judicial admissions in his sister state court action. See Odums v Greenpoint Mtge. Funding, Inc., 831 Fed. Appx. 32, 33 (2d Cir. 2020) (citing Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991)) (this Court may take judicial notice "of documents filed in other courts ... to establish the fact of such litigation and related filings").

## POINT III

## APPELLANT MUST BE DENIED LEAVE TO AMEND THE COMPLAINT

Appellant argues that he should be given further leave to amend, and that even if the lower court's basis for dismissing the Amended Complaint was legitimate, he should have nonetheless been given some kind of "meaningful opportunity to further amend." Appellant misses the point; he has already been given numerous opportunities to amend. (A009-A013 (arguably as of right under Rule 15), A021-A060 (in response to Appellee's motion to dismiss below), and A086-A098 (Appellant's proposed second amended complaint)).

The Second Circuit reviews the denial of a motion for leave to amend for abuse of discretion. See Starr v. Sony BMG Music Ent., 592 F.3d 314, 321 (2d Cir. 2010). However, to the extent the denial of such a motion is based on futility, it rests on a legal conclusion, which the Second Circuit reviews *de novo*. See Shimon

v. Equifax Info. Servs. LLC, 994 F.3d 88, 91 (2d Cir. 2021). Leave to amend may be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." See TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 505 (2d Cir. 2014) (quotation marks omitted).

Here, after Appellant had been given an opportunity to amend the complaint following Appellee's motion to dismiss, he did so only to add Mulchandani as a defendant rather than attempting to properly plead his FLSA claim. (A260).

The lower court therefore held that permitting amendment would be futile because adding Mulchandani does not overcome Appellant's failure to allege enough facts to state a FLSA overtime claim. Id.

This was not an abuse of discretion, and even upon review *de novo*, this Court should find that amendment would be futile on the same grounds, especially in light of Appellant's request that this Court provide guidance as to what he needs to allege to "succeed on an FLSA claim."

Further, a district court is not required to grant leave to amend when it grants a motion to dismiss based on pleading deficiencies, as it did here. See Porat v. Lincoln Towers Cmty. Ass'n, 464 F.3d 274, 276 (2d Cir. 2006); see also City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG, 752 F.3d 173, 188 (2d Cir. 2014).

Finally, because – as set forth above – the pleading deficiencies complained of were set forth in Appellee's motion to dismiss *prior to* Appellee's motion to amend the complaint, they were not unforeseen such that leave should be granted once more to amend. See Banco Safra S.A.-Cayman Is. Branch v Samarco Mineracao S.A., No. 19-3976-CV, 2021 WL 825743, at *5 (2d Cir. Mar. 4, 2021) ("And Banco Safra had ample opportunity to amend its complaint to cure the … deficiencies. It is thus "unlikely that the deficiencies ... were unforeseen") (citing City of Pontiac Policemen's & Firemen's Ret. Sys., 752 F.3d at 188. Accordingly, granting leave to amend would be futile and must be denied.

## CONCLUSION

For all of the foregoing reasons, the Appellant's appeal must be denied on the ground that his Amended Complaint fails to state a claim upon which relief can be granted under the FLSA. This Court must therefore affirm the decision of the Hon. Analisa Torres, U.S.D.J.

Dated:     Lake Success, New York
           June 25, 2021              Respectfully submitted,

                                      /s/Emanuel Kataev, Esq.
                                      Counsel for Defendant-Appellee
                                      Milman Labuda Law Group PLLC
                                      3000 Marcus Avenue, Suite 3W8
                                      Lake Success, NY 11042-1073
                                      (516) 328-8899 (office)
                                      (516) 303-1395 (direct dial)
                                      (516) 328-0082 (facsimile)
                                      emanuel@mllaborlaw.com

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 25(a)(6)**

This brief has been scanned for viruses and no virus was detected.

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**

This brief complies with the type-volume limitation of App. Rule 32(a)(7)(B).

This brief contains 6,329 words, excluding the parts of the brief exempted by App. Rule 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of App. Rule 32(a)(5) and the type style requirements of App. Rule 32(a)(6).

This brief has been prepared in a proportionally spaced typeface using Word 14 point Times New Roman.

Respectfully submitted,

/s/Emanuel Kataev, Esq.
Attorney

Dated at Lake Success, N.Y.
This 25th day of June 2021

## CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2021, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the CM/ECF system. All participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

Respectfully submitted,

/s/Emanuel Kataev, Esq.
Attorney

Dated at Lake Success, N.Y.
This 25th day of June 2021